Wright, J.
The record shows the following state of" facts:
John P. Reid bought the property in question, subject to-a mortgage, which is admitted to preclude any claim for-homestead. Jackson, plaintiff in error, holds a judgment, the Sykes judgment, recovered in May, 1867. A sale was ■ made upon the mortgage. After paying it, $290 remains,,, which Jackson claims under the Sykes judgment, and which Reid claims by virtue of his homestead rights. The-court of common pleas sustained Reid’s claim, and gave him the money. This action was affirmed by the district court.
The court below held that Reid’s right to the money was - determined by the amended homestead law of 1869 (66 Ohio ■ L. 48), although Jackson’s judgment was prior thereto. But we can not see that this law has any effect upon the claims of the parties. The first section, declares “ that the ■ family homestead of each head of a family shall be exempt ■ from sale on execution in any judgment or decree rendered in any cause of action accruing after the taking effect of this-act.”
*446 The Sykes judgment, under which Jackson claims, was rendered in 1867, before the passage of the amendment, .and therefore under it Reid could not exercise the right of ■exemption, and could not claim the surplus under the fourth ¡section, as is held by the supreme court in Kelly v. Duffy, 31 Ohio St. 437.
This law, therefore, has nothing further to do with the issues raised, save that by its repealing clause it continues in force former laws as to debts and liabilities contracted prior to the passage of the amended law.
The rights of the parties, therefore, are to be determined by the law of 1850 (2 S. & C. 1145). This law does not have an express claim, like that of the amendment of 1869, with reference to awarding the surplus upon a sale of the .homestead to the debtor; but the supreme court have already held, in the case just cited, that out of such surplus, .after payment of the preferred liens, an allowance may be made, in lieu of homestead, in analogy to the provisions of the homestead act in favor of debtors who are not owners •of homesteads ; and the debtor’s right to the exemption attaches to the surplus proceeds, as against creditors, when •claims do not preclude the allowance of a homestead. When the homestead is sold upon a preferred claim, or •claim against which the exemption can not prevail as to the proceeds, after paying the preferred claim, the debtor’s rights are just such as if so much of the homestead still remained. When land is sold upon execution, and turned into money, the judgment creditor is paid out of the proceeds, according as his right related to the land; but if the creditor had no claim or lien upon the land, he would have no right to be paid out of the funds in the hands of the .sheriff. And so, if the ordinary creditor could not enforce his judgment against the homestead itself, he can not .against its proceeds. When the land is converted into .money, rights are the same as they were before the conversion.
In the case before us, therefore, when Reid’s homestead •was sold it did not destroy his rights of exemption, though *447 the sale was under a claim which precluded such exemption, and Jackson was in no more favorable position than he was before the sale. Comer v. Dodson, 22 Ohio St. 616— 622. If, therefore, Reid’s right to a homestead existed when he made his claim, he is entitled to the surplus in dispute, although not under the law of 1869.
But it is claimed by plaintiff in error that Reid abandoned his homestead, and lost all right to his exemption thereby.
It may well be conceded that a man can not have two homesteads. If he gives up his homestead and moves elsewhere, making the latter residence his home, his right to the former is gone. "What the homestead is, is a question of fact. If the party has been and is living upon it at the time exemption is claimed, his right can not be disputed. And a mere temporary absence will not destroy his right any more than it will change his domicile. And there may be an enforced absence, under which the homestead right .may still exist, as in the case of Kelly v. Duffy, where the dwelling-house was burnt down, and the debtor and his family removed from the premises without intending to rebuild. This was held no abandonment of the right to a homestead.
According to the bill of exceptions, it appeal’s that the order of sale was issued in June, and sale made in July, 1871; “ that in the spring of 1871 the said John P. Reid and his family had gone, for temporary purpose only, into a house in said county,” other than the one claimed to be a homestead. This house adjoined a farm owned by Reid’s wife, which Reid cultivated. Here the family boarded-Reid sometimes spent Saturdays and Sundays at the alleged homestead, and “ always declared his intention to hold said property as his homestead, if the law would allow him, and the court finds that there is an intention of remaining (returning ?) to reside exclusively and permanently in said alleged homestead at some indefinite time in the future.”
This bill of exceptions does not show any of the evidence upon which the court proceeded. It merely says : “ It ap *448 peared to the court” thus and so. Erom what it so appeared we have no means of knowing, and we are unable to say what the weight of testimony one way or the other was. In this state of case, therefore, we can not hold that the court erred in its finding that the premises had not been abandoned, so as to destroy the homestead right. This they must have found in sustaining the debtor’s claim, and we can not see any ground to interfere, in the absence of a report of the evidence.
But, upon the face of the finding itself, we do not see that we can interfere. It states that the debtor left his: home “ for a temporary purpose only,” and counsel for plaintiff in error concede “ that a mere temporary removal is not an abandonment.”
It is further said that the debtor intended to remain (return ?) to the homestead, to reside exclusively and permanently, at some indefinite time in the future. There might, perhaps be a case of a debtor’s home being sold, where some friend had undertaken to become purchaser, with the understanding that the debtor might continue to occupy the. premises, intending to redeem them. In such case, should he temporarily remove, with the intention to return, this:could not be considered an abandonment.
The “ indefinite time in the future” is a phrase perhaps-not quite felicitous in its meaning, unless it may be said of any unexecuted purpose that it is indefinite in its particulars as to time. But however this may be, enough is shown by the record to so far justify the action of the court as-that we can not say, as a proposition of law, that they have1: erred.
Judgment affirmed..